```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
MARCOS CALCANO,                                        :
                                                       :
                                 Plaintiff,            :
                                                       :      19-cv-10442 (VSB)
                 - against -                           :
                                                       :      OPINION & ORDER
                                                       :
TRUE RELIGION APPAREL, INC.,                           :
                                                       :
                                 Defendant.            :
                                                       :
-------------------------------------------------------X
```

Appearances:

Bradly G. Marks
The Marks Law Firm, PC
New York, NY

Jeffrey Michael Gottlieb
Jeffrey M. Gottlieb, Esq.
New York, NY
*Counsel for Plaintiff*

Taryn Jean Gallup
Snell & Wilmer
Phoenix, AZ
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Marcos Calcano ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against True Religion Apparel, Inc. ("Defendant" or "True Religion"), asserting violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–8-134. Plaintiff seeks compensatory damages, attorneys' fees, and a permanent injunction.

Before me is True Religion's motion to dismiss Plaintiff's amended complaint. Because Plaintiff lacks standing to bring this case and fails to plausibly allege a violation of the ADA, and because any further amendment would be futile, True Religion's motion to dismiss Plaintiff's amended complaint is GRANTED WITH PREJUDICE.

## I. Factual Background and Procedural History

This lawsuit is one of hundreds that Plaintiff's counsel has filed alleging that retailers' failure to provide gift cards with Braille violates the ADA.[1] Courts in this District have dismissed most, if not all, of these cases. *See, e.g.*, *Lopez v. Peapod, LLC*, 19 Civ. 9906 (KPF), 2021 WL 1108559 (S.D.N.Y. Mar. 23, 2021); *Lopez v. W. Elm, Inc.*, 19 Civ. 10079 (ER), 2020 WL 6546214, at *3 (S.D.N.Y. Nov. 6, 2020); *Dominguez v. Pizza Hut of Am., LLC*, No. 19-cv-10175 (MKV), 2020 WL 3639977 (S.D.N.Y. July 6, 2020); *Thorne v. Bos. Market Corp.*, 469 F. Supp. 3d 130 (S.D.N.Y. 2020); *Dominguez v. Grand Lux Cafe LLC*, No. 19-cv-10345 (MKV), 2020 WL 3440788, at *4 (S.D.N.Y. June 22, 2020); *Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020). *See also Calcano v. Swarovski N. Am., Ltd.*, No. 20-1552, Doc. 175 (2d Cir. Jan. 13, 2021) (consolidated appeal pending before the Second Circuit).

Indeed, the First Amended Complaint and Plaintiff's opposition to the motion to dismiss in this case are virtually identical to the amended complaint and opposition filed by the same plaintiff's firm in a putatively different case before me, *Lopez v. Arby's Franchisor, LLC* ("*Arby's*"), 19-CV-10074 (VSB), 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) (Broderick, J.). (*Compare* Doc. 16 ("Am. Compl."), *with* First Amended Class Action Complaint, *Arby's*, No.

---

[1] *See* Edward Harold & Kelly McCall, *ADA Title III Lawsuits Find a New Target: Gift Cards*, JD Supra (Aug. 3, 2021), https://www.jdsupra.com/legalnews/ada-title-iii-lawsuits-find-a-new-3067779/ ("Seven visually impaired plaintiffs, in fact, filed more than 200 of those complaints in New York federal courts against restaurants, retailers, and entertainment venues. They alleged the retailers' failure to provide gift cards in braille denied equal access.").

19-cv-10074, Doc. 14 ("*Arby's* Am. Compl."); *compare* Doc. 22 ("Pl.'s Opp."), *with* Memorandum of Law in Opposition to Defendant's Motion to Dismiss, *Arby's*, No. 19-cv-10074, Doc. 20 ("*Arby's* Pl.'s Opp.").) Plaintiff replaced the parties' names and relevant dates, but left the rest almost the same, to the letter, as what was filed in *Arby's*. It is therefore not a surprise that True Religion complains that "Plaintiff's opposition is largely non-responsive to True Religion's Motion, and instead resorts to citing inapplicable case law and mischaracterizing what True Religion has actually argued and admitted." (Doc. 23 ("Def.'s Reply") 1–2.) In fact, Plaintiff's opposition argues that True Religion's memorandum cited cases that it did not mention and conceded allegations that it did not admit. (*E.g.*, *id.* at 7 ("Nowhere in True Religion's Motion does it make that concession, because it is simply not true.").) This appears to be because Plaintiff's counsel copied-and-pasted the opposition in this case from the memorandum filed in *Arby's* or from another one of Plaintiff's counsel's nearly-identical cases. (*Id.* 7 n.4 ("True Religion submits that Plaintiff likely confused True Religion's Motion with a motion filed by one of the more than 50 merchant defendants against whom Plaintiff has filed nearly identical class action complaints in this District.").)[2]

In *Arby's*, I granted the defendant's motion to dismiss the plaintiff's amended complaint with prejudice. *See Arby's*, 2021 WL 878735, at *8. Consistent with my obligation to treat like cases alike, I borrow heavily from my Opinion & Order in *Arby's*, and any legal analysis from *Arby's* not explicitly repeated here is incorporated by reference.

The facts in this case are taken from the First Amended Complaint. (*See* Am. Compl.)[3]

---

[2] Plaintiff's counsel has done this before. *See, e.g.*, *Banana Republic, LLC*, 2020 WL 1950496, at *12 (Woods, J.) ("Plaintiff's opposition responds to arguments never made by its opponent in its motion and failed to even correctly identify what Defendant sells. . . . Although it features the fruit in its name, Banana Republic does not sell bananas.").

[3] I assume the allegations in the First Amended Complaint to be true in considering the motions to dismiss pursuant

3

Plaintiff is a legally blind person who needs Braille to read written material. (*See id.* ¶ 2.) Defendant, True Religion, is a retailer that sells apparel in New York and elsewhere. (*See id.* ¶ 26.) On November 9, 2019, Plaintiff called True Religion's customer service and asked "if Defendant sold store gift cards containing Braille and was informed by Defendant's employee that Defendant does not sell store gift cards containing Braille." (*Id.* ¶ 16.) Plaintiff "intends to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind and utilize it at Defendant's retail store." (*Id.* ¶ 21.) Plaintiff brings this lawsuit as a putative class action alleging violations of the ADA, and its counterparts in the NYSHRL and NYCHRL. (*See id.* ¶¶ 61–68.) Plaintiff "seeks a permanent injunction requiring Defendant to design, implement, distribute and sell store gift cards . . . that are accessible to blind and vision-impaired individuals that may include Braille writing." (*Id.* ¶ 56.)

Plaintiff initiated this action on November 9, 2019. (Doc. 1.) On February 5, 2020, True Religion filed a motion to dismiss. (Doc. 12.) On February 21, 2020, Plaintiff filed its First Amended Complaint, (Am. Compl.), and advised me that True Religion's first motion to dismiss had been mooted, (Doc. 17). On March 6, 2020, True Religion filed a renewed motion to dismiss, (Doc. 19), along with a memorandum of law in support, (Doc. 20 ("Def.'s Mem.")), which was substantially similar to True Religion's first motion to dismiss. On March 18, 2020, Plaintiff filed an opposition. (Pl.'s Opp.) On March 25, 2020, True Religion filed a reply. (Def.'s Reply.)

---

to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should be not construed as a finding as to their veracity, and I make no such findings.

## II. Legal Standards

### A. *Standing*

Article III of the Constitution circumscribes a court's authority to hear cases, limiting the jurisdiction of federal courts to "cases" or "controversies." U.S. Const. art. III, § 2. To meet the minimum constitutional threshold, a plaintiff must establish "first, that it has sustained an 'injury in fact'. . . ; second, that the injury was in some sense caused by the opponent's action or omission; and finally, that a favorable resolution of the case is 'likely' to redress the injury." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Injury-in-fact is the "first and foremost" of the three standing elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1.) To be "concrete," an injury "must actually exist." *Id.* However, "concrete" is "not . . . necessarily synonymous with 'tangible,'" and intangible harms may, in some circumstances, satisfy the concreteness requirement. *Id.* at 340.

### B. *Failure to State a Claim*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citations omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## III. Discussion

### A. *Standing*

A plaintiff satisfies standing requirements to bring suit under Title III of the ADA only "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013). The third factor, a reasonable inference of the plaintiff's

6

"intent to return," is directly connected to the standing requirement that the "threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (internal quotation marks omitted). In order to obtain injunctive relief, "a plaintiff cannot rely on a past injury alone," *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)), but must "demonstrate that she is likely to be harmed again in the future in a similar way," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

The "intent to return" analysis is a "highly fact-sensitive inquiry." *Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015). To establish this factor, "[t]he plaintiff must allege specific facts that show a plausible intention or desire to return to the place but for the barriers to access." *Grand Lux Cafe*, 2020 WL 3440788, at *3 (internal quotation marks omitted). "Merely asserting an intent to return to the place of injury 'some day,' when the alleged barriers have been rectified, is insufficient." *Id.* at *3 (some internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 564). In particular, courts "need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 686).

Plaintiff's First Amended Complaint does not offer sufficient "non-conclusory factual allegations" to establish standing under the ADA. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 156 (2d Cir. 2012); *Amidax Trading Grp.*, 671 F.3d at 146–148 ("conclusory statements" did not establish "injury in fact"). The First Amended Complaint alleges only that Plaintiff lives "close to Defendant's retail store," that he "has been a customer at Defendant's store on prior occasions," and that he "intends to immediately purchase

7

at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind and utilize it at Defendant's retail store." (Am. Compl. ¶¶ 21, 25.) These allegations are word-for-word the same as the allegations in *Arby's*, except that the Plaintiff in *Arby's* lived "on the same street and less than 2 blocks from Defendant's restaurant." (*Arby's* Am. Compl. ¶¶ 21, 25.) I found that the Plaintiff in *Arby's* did not have standing. *See Arby's*, 2021 WL 878735, at *4. Here too, Plaintiff has made only "generic, conclusory statements" that fail to satisfy the burden for standing, *Banana Republic, LLC*, 2020 WL 1950496, at *4.[4]

As Plaintiff himself acknowledges, (Pl.'s Opp. 23; *Arby's* Pl.'s Opp. 24), "[i]n general, disability discrimination claims under the NYSHRL rise or fall in tandem with disability discrimination claims brought pursuant to the federal ADA," *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 398 (E.D.N.Y. 2017); *see also Mendez v. Apple Inc.*, 18 Civ. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) ("Plaintiff's [NYSHRL and NYCHRL] claims are governed by the same standing requirements as the ADA"). As such, Plaintiff also lacks standing under his state and city claims.

However, since some judges in this District have found that the plaintiffs who have brought these near-identical complaints have satisfied their standing requirements, as I noted in *Arby's*, 2021 WL 878735, at *4, and since the Second Circuit has yet to rule on the issue, I will also address the merits of Plaintiff's claims.

---

[4] In particular, Plaintiff has failed to allege any plausible reason why he would "immediately purchase at least one store gift card from the Defendant . . . and utilize it at Defendant's retail store." (Am. Compl. ¶ 21.) Traditionally, gift cards are given to others as gifts—not used by the gift card buyer at the same retail store from which the gift card was bought. *See Grand Lux Cafe*, 2020 WL 3440788, at *4 ("[B]y nature, a 'gift card' is not commonly understood to be for one's own use, but rather a gift to give to another person to use.").

8

### B. *ADA*

Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a).  A Title III claim requires that a plaintiff establish that "(1) he or she is disabled within the meaning of the ADA; (2) that the defendant[ ] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that the defendant[ ] discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

Plaintiff's ADA claim "can be reduced to one relatively straightforward question:  does Title III of the ADA obligate retailers to provide legally blind consumers with Braille-embossed (or otherwise accessible) gift cards?" *Banana Republic, LLC*, 2020 WL 1950496, at *5. It does not.

#### 1. **Gift Cards are Not Places of Public Accommodation**

As noted *supra*, Title III prohibits discrimination by any place of public accommodation. *See* 42 U.S.C. § 12182(a).  Plaintiff argues that gift cards should be "deem[ed] . . . a 'place of public accommodation' in and of themselves," (Pl.'s Opp. 19; *Arby's* Pl.'s Opp. 19), and therefore that failure to provide gift cards in Braille means that visually impaired individuals are prevented from "full and equal enjoyment" of a public accommodation in violation of Title III, *see* § 12182(a).

Title III's definitions gives twelve categories of "private entities [that] are considered public accommodations for the purposes of this subchapter." 42 U.S.C. § 12181(7).  Each category provides a number of examples of locations that are representative of the more general, catch-all category.  *See, e.g.*, *id.* § 12181(7)(H) ("a museum, library, gallery, or other place of

9

public display or collection"); § 12181(7)(I) ("a park, zoo, amusement park, or other place of recreation"). These categories are intended to be an "exhaustive list" such that "a facility [cannot] be considered a place of public accommodation if it does not fall under one of these 12 categories," although the examples provided in each category are not intended to be exhaustive. *See* U.S. Dep't of Justice, ADA Title III Technical Assistance Manual: Covering Public Accommodations and Commercial Facilities, III-1.2000 Public Accommodations, https://www.ada.gov/taman3.html (last visited Mar. 4, 2021). Gift cards are not listed either as a category or an example under the statute. *See* § 12181(7).

Furthermore, there is no reason to believe that gift cards should be read as part of any of the categories of public accommodation described in Title III. "Under the interpretive maxim of *noscitur a sociis*, 'a word is known by the company it keeps.'" *United States v. Thompson*, 961 F.3d 545, 550–51 (2d Cir. 2020) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)). Similarly, under the statutory canon of *ejusdem generis*, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Wojchowski v. Daines*, 498 F.3d 99, 108 n.8 (2d Cir. 2007) (citation omitted). Considering each of these maxims, every single example listed among the twelve categories in § 12181(7) is a place or establishment, where a gift card is merely a small, personal object. Stated simply, "[n]othing on the list even remotely resembles a gift card." *Murphy v. Little Caesar Enters., Inc.*, 19 Civ. 10329 (LGS), 2020 WL 3318279, at *2 (S.D.N.Y. June 18, 2020). Plaintiff does not meaningfully contest this analysis, and does not even discuss § 12181(7) in its briefings, save for a stray citation without any material or relevant analysis. (*See* Pl.'s Opp. 18 n.45; *see also Arby's* Pl.'s Opp. 18 n.45.)

10

In sum, gift cards are goods—as discussed in greater detail below—not places of public accommodation under the ADA.

### 2. Gift Cards are Goods

Plaintiff argues that even if gift cards are not places of accommodation themselves, True Religion is still violating the ADA by failing to sell accessible gift cards. However, the law is clear that if gift cards constitute "goods" under the ADA, then True Religion is not required to provide Braille or otherwise accessible gift cards. *See* 28 C.F.R. § 36.307(a) (Title III of the ADA "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities"); 28 C.F.R., pt. 36, app. C ("The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided."); *Funches v. Barra*, 14 Civ. 7382 (KPF), 2016 WL 2939165, at *4 (S.D.N.Y. May 17, 2016); *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010) ("[T]he ADA does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." (internal quotation marks omitted)). The statute's implementing regulations envision a scenario that is essentially analogous to the one presented here, as they explain that although a "bookstore . . . must make its facilities and sales operations accessible to individuals with disabilities, [it] is not required to stock Brailled or large print books." 28 C.F.R., pt. 36, app. C.

Plaintiff argues—as he must—that "[g]ift cards are not goods." (Pl.'s Opp. 14; *see also Arby's* Pl.'s Opp. 14.) Instead, Plaintiff argues that "gift cards are an optional financial service providing an alternative method of payment," or a "cash like service." (Pl.'s Opp. 14–15, 19; *see also Arby's* Pl.'s Opp. 14–15, 19.) The ADA does not define "goods." The most appropriate

11

dictionary definition defines "goods" as "something manufactured or produced for sale." Good, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/good (last visited Mar. 4, 2021); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003) ("[T]he dictionary definition of 'goods' (as relevant here) is 'wares; merchandise.'"). According to the plain meaning, then, gift cards are goods—they are manufactured items that True Religion "has sold" and "presently sells" to customers and the general public in the same manner as it sells its other products. (Am. Compl. ¶ 15; *see also Arby's* Am. Compl. ¶ 15). As Judge Gregory Woods rightly determined, Plaintiff's "analogy to cash falls apart under even modest scrutiny." *Banana Republic, LLC*, 2020 WL 1950496, at *11 n.8. In *American Council of the Blind v. Paulson*, a case on which Plaintiff relies, (Pl.'s Opp. 19–20; *see also Arby's* Pl.'s Opp. 19–20), the D.C. Circuit determined that currency "has constitutional underpinnings" and "is intended to be the universal medium or common standard, by a comparison with which the value of all merchandise may be ascertained." 525 F.3d 1256, 1268 (D.C. Cir. 2008) (internal quotation marks omitted). True Religion's gift cards are almost the opposite of a "universal medium," given that they "are accepted only at a specified merchant or affiliated merchants." (Am. Compl. ¶ 29 & n.4; *see also Arby's* Am. Compl. ¶ 29 & n.4.) In other words, they are not universally accepted but must be purchased for a fee and can be used only at True Religion's establishments.

Therefore, I conclude that True Religion's gift cards are goods, and as such True Religion need not stock accessible gift cards.

### 3. Failure to Offer Gift Cards in Braille is Not a Failure to Provide Auxiliary Aids

Plaintiff's final theory of liability under the ADA is that "the lack of sufficient auxiliary aids regarding Defendant's gift cards amounted to a denial of the full and equal enjoyment of

services Defendant otherwise provides to the public." (Pl.'s Opp. 21; *see also Arby's* Pl.'s Opp. 21.) This argument also fails.

The ADA states, in relevant part, that a place of public accommodation unlawfully discriminates where there is:

> failure to take [ ] steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii). Under Title III, "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Plaintiff argues both that "this Court should deem gift cards a 'place of public accommodation' in and of themselves"—which is incorrect, *see supra* Section III.B.1—and that "True Religion's retail chain stores are a 'place of public accommodation' within the definition of Title III"—which is correct. True Religion is obligated under Title III to "furnish appropriate auxiliary aids and services" at its retail chain stores. (*See* Def.'s Mem. 8 n.4 ("For purposes of this motion only, True Religion acknowledges that its physical retail stores are places of 'public accommodation' within the meaning of Title III of the ADA.").)

Neither the statute nor implementing regulations specify what auxiliary aid or service is required, but they make clear that Braille is not necessarily always required. *See* 28 C.F.R. § 36.303(c)(1)(ii) ("The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. . . . [T]he ultimate decision as to what measures to

13

take rests with the public accommodation, provided that the method chosen results in effective communication."); *see also* 28 C.F.R., pt. 36, app. C ("The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication.").

Crucially, then, to survive a motion to dismiss, Plaintiff must plausibly plead that True Religion lacks any sufficient auxiliary aids to ensure full and equal enjoyment of the gift cards, and not just Braille gift cards. Plaintiff has failed to do so. Plaintiff alleges that he called True Religion's customer service office and "inquired if Defendant sold store gift cards containing Braille." (Am. Compl. ¶ 16; *see also Arby's* Am. Compl. ¶ 16.) Plaintiff alleges that True Religion's employee said True Religion does not sell gift cards in Braille, and that "Defendant's employee did not offer any alternative auxiliary aids or services to the Plaintiff with respect to Defendant's gift cards." (*Id.* ¶¶ 16–17.) Plaintiff then alleges "[u]pon information and belief, Defendant does not offer auxiliary aids with respect to the gift cards." (*Id.* ¶ 19.) The only "fact" that Plaintiff offers in support of his claim that True Religion lacks sufficient auxiliary aids other than Braille is that the employee he spoke to did not, on their own and absent a direct question, independently offer that True Religion provides any alternative auxiliary aids. Plaintiff does not allege that he directly asked whether True Religion offers alternative auxiliary aids other than Braille gift cards, that any of True Religion's employees told him that True Religion does not provide alternative auxiliary aids, or provide any source of knowledge for his "information and belief" that True Religion lacks these alternative auxiliary aids. Plaintiff does not even allege that he informed True Religion's employee of his disability, thus failing to put True Religion on notice that Plaintiff might require an alternative auxiliary aid. (*See* Def's Mem. 9 (citing *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466 (S.D.N.Y.

14

2012) ("Although courts in the Second Circuit do not always explicitly list notice of the alleged disability as an element of a Title III failure to accommodate claim, it is an assumed prerequisite." (collecting cases)); *see also* Def.'s Reply 2–3)).

Plaintiff's conclusory allegations thus fall well short of meeting his burden at the motion-to-dismiss stage.

### C. *State and Local Claims*

Ordinarily, pursuant to 28 U.S.C. 1367(c), when "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)). Having dismissed Plaintiff's ADA claim, I decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. Accordingly, Plaintiff's remaining claims are dismissed.[5]

### D. *Leave to Amend*

Plaintiff requests that if I grant True Religion's motion to dismiss, that I should also grant Plaintiff leave to amend to file a Second Amended Complaint. (Pl.'s Opp. 24; *see also Arby's* Pl.'s Opp. 24.) At this point in the action, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

---

[5] Having dismissed all of Plaintiff's federal, state, and local causes of action, I need not address True Religion's motion, in the alternative, to strike the class allegations pursuant to Rule 23(d)(1)(D). (*See* Def.'s Mem. 23–25; Def.'s Reply 9–10.)

amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). "A proposed amended pleading is futile when it fails to state a claim." *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 Civ. 5651(AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013). "If the proposed amendment cannot survive a 12(b)(6) motion to dismiss, a court may properly deny it." *Fei v. WestLB AG*, No. 07CV8785(HB)(FM), 2008 WL 594768, at *2 (S.D.N.Y. Mar. 5, 2008).

As noted *supra*, True Religion raised essentially identical arguments in its original motion to dismiss, (*see generally* Doc. 13), as it did in its motion to dismiss the First Amended Complaint, (*see generally* Def.'s Mem.). "When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." *NCUA Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) (internal quotation marks omitted). Plaintiff was on notice of Defendant's arguments here.

Furthermore, Plaintiff does not specify how, if at all, he plans to remedy the serious substantive problems underlying his claims in this lawsuit. If a plaintiff "has suggested no new material [he] wishes to plead," and if "better pleading will not cure" "substantive" deficiencies in a cause of action, then repleading will be futile, and "a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Finally, in several of the other, near-identical suits brought by Plaintiff's counsel, plaintiffs did not file a second amended complaint even after judges in this District granted those plaintiffs' motions for leave to amend. *See, e.g.*, *Mendez v. Bath & Body Works, LLC*, 19-CV-9856 (JPO), 2020 WL 5518362, at *2 (S.D.N.Y. Oct. 7, 2020); *Dominguez v. Taco Bell Corp.*, 19-cv-10172-LGS (S.D.N.Y.), Docs. 50–51; *Banana Republic, LLC*, No. 19-cv-10171, Docs. 28,

31. For these reasons, I join other judges in this District in denying Plaintiff's motion for leave to file a second amended complaint. *See Lopez v. Capital Grille Holdings, Inc.*, No. 1:19-cv-09891 (MKV), 2020 WL 4735121, at *4 (S.D.N.Y. Aug. 14, 2020); *Lopez v. Stop & Shop Supermarket Co. LLC*, 19-CV-9913 (JMF), 2020 WL 4194897, at *2 (S.D.N.Y. July 21, 2020); *Mendez v. Papa John's USA Inc.*, No. 19-CV-9892 (JMF), 2020 WL 4194916, at *2 (July 21, 2020); *Grand Lux Cafe*, 2020 WL 3440788, at *4.

## IV.    Conclusion

Because Plaintiff lacks standing to maintain this lawsuit, the First Amended Complaint fails to plausibly allege an ADA claim, and any further amendment would be futile, Defendant's motion to dismiss is GRANTED WITH PREJUDICE.

SO ORDERED.

Dated: March 31, 2022
       New York, New York

*Vernon Broderick*

Vernon S. Broderick
United States District Judge